**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  8/2/11

------------------------------------------------ X

**UNITED STATES OF AMERICA**

- against -

**VIKTOR BOUT,**

           **Defendant.**

------------------------------------------------ X

**OPINION AND ORDER**

**08 Cr. 365 (SAS)**

## I.   INTRODUCTION

On July 11, 2011, I denied Defendant Viktor Bout's motion to dismiss, on jurisdictional grounds, the Indictment in this case.[1]  On July 21, 2011, I held oral argument on Bout's remaining motions to dismiss the Indictment based on vindictive prosecution, unlawful extradition, and the "rule of speciality," and to dismiss Counts One and Two because the Government failed to allege that he acted with malice aforethought.[2]  For the reasons that follow, those motions are also denied.

---

[1]   *See United States v. Bout*, No. 08 Cr. 365, 2011 WL 2693720 (S.D.N.Y. July 11, 2011).  This Opinion assumes familiarity with the background of this case, as described in the July 11th opinion.

[2]   *See* Defendant's Memorandum of Law in Support of Second Pre-Trial Motion to Dismiss the Indictment ("Def. Mem.").  Counts I and II allege Bout's participation in conspiracies (1) to kill United States nationals, *see* 18 U.S.C. § 2332(b), and (2) to kill officers and employees of the United States, *see id.* §§ 1114, 1117.

## II.    DISCUSSION

### A.    Vindictive Prosecution

#### 1.    Applicable Law

[T]he decision as to whether to prosecute generally rests within the broad discretion of the prosecutor, and a prosecutor's pretrial charging decision is presumed legitimate. However, [t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and a prosecution brought with vindictive motive, penalizing those who choose to exercise constitutional rights, would be patently unconstitutional. Accordingly, an indictment will be dismissed [1] if there is a finding of actual vindictiveness or [2] if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action.

To establish an actual vindictive motive, a defendant must prove objectively that the prosecutor's charging decision was a direct and unjustifiable penalty that resulted solely from the defendant's exercise of a protected legal right. Put another way, the defendant must show that (1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a "stalking horse," and (2) [the defendant] would not have been prosecuted except for the animus.

To establish a presumption of prosecutorial vindictiveness, the defendant must show that the circumstances of a case pose a realistic likelihood of such vindictiveness. The circumstances must present a realistic likelihood of vindictiveness that would be applicable in all cases, and any such presumption may be overcome by objective evidence justifying the prosecutor's action. A presumption of vindictiveness generally does not arise in a pretrial setting.

. . . [T]o obtain discovery on a claim of [vindictive] prosecution, . . . a defendant must provide some evidence tending to show the existence of the essential elements of the defense. The standard is a rigorous one . . . .  [E]xamining the basis of a

-2-

prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.[3]

## 2.    Application

Bout argues that he was vindictively targeted for prosecution because the Department of Defense was embarrassed when, in early 2006, it came to light that "Bout front-companies were supplying the United States military in Iraq"[4] with tents, food, and other supplies in violation of the Office of Foreign Assets Control's designation of Bout as a Specially Designated National – a designation that prohibited any transactions between him and any U.S. national.[5]  Although Bout had committed "no crime against the United States,"[6] in late 2007, then-Deputy Assistant to the President and Deputy National Security Advisor Juan Zarate "threw out the challenge to capture Viktor Bout to the U.S. Drug

---

[3]      *Untied States v. Sanders*, 211 F.3d 711, 716-17 (2d Cir. 2000) (quotation marks and citations omitted).

[4]      Def. Mem. at 3.

[5]      *See id.* at 6 (asserting that "[w]hether the motivation for this was 'pay back' for the embarrassment that Bout had caused the Bush government or, for political reasons, to create a scapegoat to deflect attention from the government's unseemly relationship with this alleged 'Merchant of Death' . . . is not clear.").

[6]      *Id.*

-3-

Enforcement Administration [("DEA")]."[7]  And once "[B]out was in [the DEA's] cross-hairs, . . . [h]e was going down," the DEA's former chief of operations, Michael Braun, stated in an interview with 60 Minutes.[8]  Bout requests, at a minimum, that the Court order a hearing to allow for one hour of questioning of Zarate.[9]

Although the Government offers a perfectly acceptable reason for its decision to target Bout – that "he constituted a threat to the United States and to the international community based on his reported history of arming some of the world's most violent and destabilizing dictators and regimes"[10] – it need not

---

[7]      *Id.*

[8]      *Id.* (quotation marks omitted).

[9]      *See* Transcript of 7/21/11 Oral Argument ("Tr.") at 16.

[10]     Government's Memorandum of Law in Opposition to Defendant's Second Pre-Trial Motion to Dismiss the Indictment ("Opp. Mem.") at 8.  *See id.* at 3-5 (citing (1) a December 2000 United Nations report on the civil war in Angola identifying Bout as one of the few individuals capable of delivering weapons and other illicit cargo in war conditions and in violation of international embargoes; (2) the United Nations Security Council's March 2004 "Resolution 1532," finding that Bout had supported the regime of former Liberian President Charles Taylor, and directing United Nations member states to freeze any assets owned or controlled by Bout; and (3) Executive Orders 13348 (July 2004) ("Blocking Property of Certain Persons and Prohibiting the Importation of Certain Goods From Liberia") and 13413 (October 2006) ("Blocking Property of Certain Persons Contributing to the Conflict in the Democratic Republic of Congo"), designating Bout as a Specially Designated National for his alleged involvement in (1) Taylor's efforts to destabilize Sierra Leone and (2) in the Congo Civil war.)

demonstrate any "'legitimate, articulable, objective reasons'" for that decision,[11] because Bout has not raised a rebuttable presumption of a "realistic likelihood" of vindictiveness.[12]  Even assuming the Defense Department "harbored genuine animus toward [Bout]" due to its embarrassment over the disclosure of its alleged dealings with him, Bout's proffer falls far short of establishing that he "would not have been prosecuted but for the animus."[13]  Even if Bout's alleged assistance to U.S. military efforts in Iraq can properly be categorized as a "protected legal right,"[14] his assistance to war criminals and to outlawed and extremely violent regimes in Liberia, Angola, and the Congo defeats any inference that the decision to investigate and prosecute him "resulted *solely* from [his] exercise of [any such] protected legal right."[15]  Given that it took the DEA nearly two years to initiate an

---

[11]     *United States v. King*, 126 F.3d 394, 399 (2d Cir. 1997) (quoting *United States v. Contreras*, 108 F.3d 1255, 1263 (10th Cir. 1997)).

[12]     *Sanders*, 211 F.3d at 717 (quotation marks omitted).

[13]     *United States v. Chalmers*, 474 F. Supp. 2d 555, 568 (S.D.N.Y. 2007) (citing *Sanders*, 211 F.2d at 717).

[14]     *Sanders*, 211 F.3d at 717 (quotation marks omitted).  *See* Tr. at 33 ("[Weapons-trafficking is] very different [from] . . . work[ing] for the Salvation Army or a charity which is typically not going to . . . bleed[] over into criminal activity.  Arms trafficking, even legitimate arms trafficking could potentially lead to criminal activity.") (AUSA Brendan R. McGuire).

[15]     *Id.* at 716-17 (quotation marks and citations omitted) (emphasis added).

investigation after the Department of Defense suffered the alleged embarrassment, Bout has not shown that the United States targeted him "to punish him or to retaliate against him" for his alleged sale of weapons to U.S. military contractors in Iraq.[16]  And because Bout has shown *at most* a "mere possibility that animus might exist" – but no actual "evidence of genuine animus" – he is not entitled to discovery or an evidentiary hearing.[17]  Braun's statement that once "[B]out was in [the DEA's] cross-hairs, . . . [h]e was going down"[18] speaks to Braun's confidence in the DEA's ability to carry out sting operations effectively, not to his or the DEA's animus toward Bout for the exercise of a protected legal right.  Bout's evidence falls far short of the "rigorous" standard[19] required to open an

---

[16]      Indeed, if the Department of Defense was in fact embarrassed by the disclosure of its alleged relationship with Bout, "common sense suggests that the U.S. Government would attempt to terminate its relationship with Bout quickly and quietly."  Opp. Mem. at 13 (observing that "[t]he DEA's international sting investigation, which resulted in Bout's arrest in a foreign country at the request of the United States, achieved the opposite result" by "focus[ing] the international media's attention on Bout for an extended period of time while he was imprisoned in Thailand and led some members of the media to scrutinize his past relationship with various countries, including the United States").

[17]      *Sanders*, 211 F.3d at 718 (quotation marks omitted).  *Accord United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992) ("Mere assertions and generalized proffers on information and belief are insufficient [to justify discovery].") (citing *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)).

[18]      Def. Mem. at 6 (quotation marks omitted).

[19]      *Sanders*, 211 F.3d at 717 (quotation marks omitted).

investigation into the basis for the Government's prosecution, and his request to do so is therefore denied.

## B.   Unlawful Extradition

### 1.   Applicable Law

"Under the long-standing *Ker–Frisbie* doctrine, the manner in which an indicted individual comes before a court does not affect the court's jurisdiction."[20]  "[A]lthough courts of the United States have authority to determine whether an offense is an extraditable crime when deciding whether an accused should be extradited *from* the United States, . . . our courts cannot second-guess another country's grant of extradition to the United States."[21]  "[E]xceptions . . . to this general rule have been made in the case of shocking and outrageous

---

[20]    *United States v. Awadallah*, 202 F. Supp. 2d 17, 41 (S.D.N.Y. 2002) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)).  *Accord United States v. Romano*, 706 F.2d 370, 373 (2d Cir. 1983) ("[C]riminal jurisdiction is not impaired by the illegality of the method by which the court acquires *in personam* jurisdiction.") (quotation marks omitted).

[21]    *United States v. Campbell*, 300 F.3d 202, 209 (2d Cir. 2002) (emphasis added).  *Accord United States v. Romy*, 506 F.3d 108, 129 (2d Cir. 2007) ("[A]bsent explicit treaty language conferring individual enforcement rights, treaty violations are generally addressed by the signatory sovereigns through diplomatic channels."); *United States v. Salinas Doria*, No. 01 Cr. 21(GEL), 2008 WL 4684229, at *4 (S.D.N.Y. Oct. 21, 2008) ("[C]harges against a defendant in an American court should not be dismissed solely because of an alleged defect in the judicial or diplomatic processes leading to that defendant's extradition.").

government conduct"[22] such as when the defendant can prove "torture, brutality, and similar outrageous conduct."[23]

## 2.    Application

Bout argues that the United States applied "enormous, coercive political pressure" upon Thailand to reverse a lower court's denial of the United States' extradition request, denying Bout an "unbiased" extradition hearing in the Thai appellate court and warranting at least a hearing on the manner in which he was brought to a court in the United States.[24]  His argument is based on two "secret United States State Department cables which [were] leaked to Wikileaks"[25] that reveal "a multi-pronged effort to seek a successful reversal [of the Thai lower court's denial of extradition] during the appeals process."[26]  However, far from any impropriety, the cables merely demonstrate the State Department's (1) view that

---

[22]    *United States v. Al Kassar*, 582 F. Supp. 2d 488, 495 (S.D.N.Y. 2008) (citing *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974)).  It is noteworthy that many courts have questioned whether *Toscanino* remains good law in that it has never been followed and has been rejected in other circuits.

[23]    *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 65 (2d Cir. 1975).

[24]    Def. Mem. at 21.

[25]    *Id.* at 10.

[26]    8/13/09 Cable, Ex. E to Def. Mem., ¶ 1.

Bout was "a high priority for the United States";[27] (2) concern that the lower

court's ruling was "not justified on legal grounds"[28] and that "Russian supporters

have been using money and influence in an attempt to block extradition," including

through the use of "false testimony . . . that Bout was in Thailand as part of [a]

government-to-government submarine deal;"[29] and (3) determination that the

"deficient ruling . . . receive a comprehensive and meaningful review by the

appellate court."[30]  Even assuming the truth of Bout's allegations that the State

Department applied "enormous, coercive political pressure," his motion is squarely

foreclosed by the *Ker-Frisbie* doctrine and by the doctrine that "our courts cannot

second-guess another country's grant of extradition to the United States."[31]

---

[27]     2/13/09 Cable, Ex. D to Def. Mem., ¶ 3.

[28]     8/13/09 Cable, Ex. E to Def. Mem., ¶ 5.

[29]     2/13/09 Cable, Ex. D to Def. Mem., ¶ 2.

[30]     8/13/09 Cable, Ex. E to Def. Mem., ¶ 7.

[31]     *Campbell*, 300 F.3d at 209 ("It could hardly promote harmony to request a grant of extradition and then, after extradition is granted, have the requesting nation take the stance that the extraditing nation was wrong to grant the request.").  *Accord United States v. Umeh*, No. 09 Cr. 524, 2011 WL 9397, at *4 (S.D.N.Y. Jan. 3, 2011) (where defendant was extradited "pursuant to a facially valid Expulsion Order issued by the Liberian Government," the "United States is not responsible for ensuring that a foreign sovereign complies with its internal laws in issuing an extradition or expulsion.").

Accordingly, Bout's motion, and his request for a hearing, are denied.[32]

### C.      Doctrine of Specialty

#### 1.      Applicable Law

"Based on international comity, the principle of speciality generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country."[33]  Accordingly, the doctrine of specialty

> requires that an extradited defendant be tried for the crimes on which extradition was granted, and none other. . . .  It reflects an agreement between states that persons surrendered should not be subjected to indiscriminate prosecution by the receiving state.  In order to effect this agreement, . . . [an] [extradited defendant] cannot be tried on counts for which extradition was not granted.[34]

#### 2.      Application

Bout argues that the Indictment violates the doctrine of specialty because, whereas the Indictment alleges that he conspired with one Andrew Smulian, "extradition was sought specifically and exclusively for crimes which []

---

[32]      *See United States v. Marzano*, 537 F.3d 257, 271 (7th Cir. 1976) ("Once the defendant is before this court, the court will not inquire into the circumstances surrounding his presence there.").

[33]      *United States v. Baez*, 349 F.3d 90, 92 (2d Cir. 2003).

[34]      *United States v. Medina*, 985 F. Supp. 397, 400 (S.D.N.Y. 1997) (quotation marks and citations omitted).

-10-

Bout allegedly *conspired to commit with FARC and no one else*."[35]  In support,

Bout cites a statement (1) from the Thai prosecutor's appeal of the lower court's

decision[36] and (2) from the Thai appellate court's opinion.[37]  Based on these two

statements, Bout argues that "the facts upon which extradition was requested and

granted described only alleged conspiratorial conduct as between [] Bout and [the]

FARC."[38]

However, Bout fails to mention that the full *extradition request*

contained (1) the Indictment, alleging that "an unnamed co-conspirator ('CC-1') of

[Bout]" (Smulian) "met with Bout in Moscow, Russia, to discuss the arms deal

with the FARC proposed by CS-2 and CS-3," who are identified in the Indictment

as "confidential sources working with the United States Drug Enforcement

Administration";[39] (2) an affidavit of a DEA agent, stating that "CC-1" is a "Co-

Conspirator of Viktor Bout," and that CS-1, CS-2, and CS-3 are "[c]onfidential

---

[35]     Def. Mem. at 23 (emphasis in original).

[36]     *See* Thai Prosecutor's Appeal, Ex. F to Def. Mem., at 2 ("The accused was involved in conspiracy to commit crime *with [FARC]* . . . .") (emphasis added).

[37]     Thai Appellate Court Opinion, Ex. G to Declaration of AUSA McGuire, at 2 ("The Defendant was allegedly *collaborating with the [FARC]* . . . .") (emphasis added).

[38]     Def. Mem. at 24.

[39]     Indictment ¶¶ 8(a)-(d).

[s]ource[s] working with DEA";[40] and (3) an affidavit of another DEA agent, stating that "[t]he investigation has revealed that BOUT, a Russian national, *conspired with others* . . . to provide military-grade weapons . . . *to the FARC*."[41] Thus, Bout's assertion that "extradition was *sought* specifically and exclusively for crimes which [] Bout allegedly *conspired to commit with FARC and no one else*"[42] is flatly contradicted by the full extradition request.

Nor did "the facts upon which extradition was . . . *granted* describe[] only alleged conspiratorial conduct as between [] Bout and [the] FARC."[43]  For example, the Thai appellate court's description of the Indictment accurately states that "the *Defendant et al conspired* to supply and accumulate weapons as well as to provide terrorist training *to* FARC"[44] and that "the Defendant is accused of conspiring to kill US nationals, US officers and employees . . . and to provide

---

[40]     Affidavit of Louis J. Milione, Special Agent of the DEA, Concerning Request for Extradition [Docket No. 10] ¶ 3.

[41]     Affidavit of Christine A. Hanley, Special Agent of the DEA, in Support of Request for Extradition [Docket No. 9, Ex. 4], Ex. 3 to Affidavit of AUSA McGuire in Support of Request for Extradition, ¶ 6 (emphasis added).

[42]     Def. Mem. at 23 (first emphasis added).

[43]     *Id.* at 24 (emphasis added).

[44]     Thai Appellate Court Opinion at 2 (emphasis added).

supporting weapons *to the terrorist organization*."[45]  The Thai appellate court also appeared to understand – as the testimony of Special Agent Robert Zachariasiewicz before the lower court made clear[46] – "that underlying the sought extradition there was nothing more than a manufactured sting operation that was designed to ensnare Bout . . . ."[47]  In other words, the Thai appellate court was fully aware that Bout did not conspire with any real members of the FARC.  Thus, because the basis for Bout's rule-of-specialty argument is completely "controverted by the full context of the Thai court's understandings,"[48] his motion

_____

[45]     *Id.* at 15.  *Accord* Thai Prosecutor's Appeal at 2 ("[T]he accused *and his conspirator(s)* conspired to provide, compile weapons and train terrorism *to FARC group . . . .*") (emphasis added).

[46]     *See* Draft Translation of Summary of 9/22/08 testimony of Robert Zachariasiewicz, Exhibit to 7/21/11 Letter from the Government to the Court, at 9 ("The CS who was part of the investigation was not US government official but *an individual working for the US government as a CS*, which means that he/she could play any role as ordered by an investigator such as being a FARC's representative.  *I myself and the other officer in the group ordered the CS to play the role of a FARC officer.*  Both of us are US officials.  What I and my team do in this case is for the purpose of law enforcement.") (emphasis added).

[47]     Def. Mem. at 12.  *See* Thai Appellate Court Opinion at 7 ("The Defendant discussed with US Confidential Sources (CS), *whom he believed were FARC officers*. . . . [T]he CS told the Defendant that rifles could not shoot at [US] helicopters, only surface-to-air missiles could.") (emphasis added); *id.* at 16 ("[Zachariasiewicz] was ready to reveal evidence and a memorandum the Defendant had done with the US confidential sources, *whom he believed was FARC officers*.") (emphasis added).

[48]     Tr. at 45 (AUSA Guruanjan Sahni).

to dismiss the Indictment on that basis is denied.

### D.      Failure to Allege Malice Aforethought (Counts I and II)

#### 1.      Applicable Law

##### a.      Sufficiency of the Indictment

An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."[49]  The "two constitutional requirements for an indictment" are (1) that it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and (2) that it "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[50]

> [A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.  An indictment must be read to include facts which are necessarily implied by the specific allegations made.  In short, an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of

---

[49]      Fed. R. Civ. P. 7(c)(1).

[50]      *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quotation marks and citations omitted) (holding that "the use of the word 'attempt,' coupled with the specification of the time and place of respondent's attempted illegal reentry, satisfied both").

future prosecutions for the same offense.[51]

The Second Circuit has " repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity."[52]

### b.      Counts I and II of the Indictment

Count I of the Indictment charges Bout with conspiring with Smulian to murder U.S. nationals in violation of 18 U.S.C. § 2332(b):

> Whoever outside the United States attempts to kill, or engages in a conspiracy to kill, a national of the United States shall–. . . (2) in the case of a conspiracy by two or more persons to commit a killing that is a murder *as defined in section 1111(a) of this title*, if one or more of such persons do any overt act to effect the object of the conspiracy, be fined under this title or imprisoned for any term of years or for life . . . .[53]

Count II of the Indictment charges Bout with conspiring with Smulian to murder officers and employees of the United States in violation of 18 U.S.C. § 1114:

---

[51]     *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (quotation marks and citations omitted).  *Accord United States v. Berlin*, 472 F.2d 1002, 1007-08 (2d Cir. 1973) ("[T]here is no requirement that the offense be charged in the language of the statute, so long as the defendant is apprised of the offense with which he is charged.") (holding that trial court should have dismissed count requiring knowledge of falsity of statements, where indictment alleged only that defendant "counseled and caused" someone else to submit false statements, because the term "counsel" does not imply knowledge of the falsity of the statements).

[52]     *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (quotation marks and citation omitted).

[53]     18 U.S.C. § 2332(b) (emphasis added).

-15-

> Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished--(1) in the case of murder, *as provided under section 1111. . . .*[54]

18 U.S.C. 1111(a) in turn defines murder as "the unlawful killing of a human being with malice aforethought."  "Malice is the state of mind that would cause a person to act without regard to the life of another. . . . [T]he defendant must have acted consciously, with the intent to kill another person."[55]

### c.    Conspiracy

"[C]onspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself."[56]

---

[54]    18 U.S.C. § 1114 (emphasis added).  18 U.S.C. § 1117 provides that "[i]f two or more persons conspire to violate section [18 U.S.C. § 1114], and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life."

[55]    2 Leonard B. Sand et al., Modern Federal Jury Instructions—Criminal ¶ 41.01, Inst. 41–4 (2009).

[56]    *Ingram v. United States*, 360 U.S. 672, 678 (1959).  *Accord United States v. Harrelson*, 754 F.2d 1153, 1172 (5th Cir. 1985) ("First degree murder under [18 U.S.C. § 1111] clearly requires the criminal intent of premeditation and malice aforethought.  Thus, . . . proof of premeditation and malice aforethought is required to sustain a conviction of conspiracy to commit first degree murder under

-16-

2.      **Application**

Bout argues that because 18 U.S.C. §§ 2332(b) and 1114/1117 require proof of malice aforethought (via their incorporation by reference of 18 U.S.C. § 1111(a)), and because the Indictment fails explicitly to allege that Bout acted with malice aforethought (a fact the Government does not dispute), Counts I and II must be dismissed for failure to allege an essential element of the crimes charged – the requisite mental state.[57]  However, notwithstanding the absence of the words "malice aforethought," the Indictment "fairly inform[ed] [Bout] of the charge[s] against which he must defend, and . . . enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[58]  The Indictment tracks the language of the offenses alleged in Counts One and Two, and alleges in no fewer than forty different overt acts "the time, place, and manner in which" Bout and a co-conspirator "engaged in the charged conspirac[ies]."[59]  For example,

―――――――――――

that section.") (holding that the trial court's failure to give instructions on premeditation and malice aforethought, and its substitution of willfulness as the criminal intent required for first-degree murder conviction, constituted reversible error with regard to conspiracy to commit murder charge against one defendant).

[57]     *See* Def. Mem. at 25-26.

[58]     *LaSpina*, 299 F.3d at 177 (quotation marks and citations omitted).

[59]     *Al Kassar*, 582 F. Supp. 2d at 496 (rejecting defendants' argument that the indictment failed to allege that defendants "had the specific intent to kill United States nationals," because "in actuality any fair reading of Count 1 shows

it alleges that Bout understood the CSs' intent to use his arms "against U.S. forces in Columbia" and "to kill American pilots."[60]  Moreover, it alleges that Bout stated that "the United States was also his enemy" and that "the fight against the United States was also his fight."[61]  Reading the Indictment "to include facts which are necessarily implied by the specific allegations" therein,[62] the Indictment sufficiently alleges "the essential facts constituting the offense[s] charged"[63] – including that Bout "act[ed] without regard to the life of [others]."[64]  Whether the evidence at trial will bear this element out is another matter.

---

defendants' knowing intent to participate in every aspect of the charged conspiracy" which, "[f]or pleading purposes," was "more than sufficient").

[60]     Indictment ¶¶ 8(ee), (ff).

[61]     *Id.* ¶¶ 8(ee), (gg).

[62]     *LaSpina*, 299 F.3d at 177.

[63]     Fed. R. Crim. P. 7(c)(1).

[64]     Sand et al., Modern Federal Jury Instructions—Criminal ¶ 41.01, Inst. 41–4 (2009).  *Accord United States v. Wydermyer*, 51 F.3d 319, 325 (2d Cir. 1995) (although "it is not clear that the government was bound to charge an effect on interstate commerce in the indictment" because "the interstate commerce requirement is found not in [18 U.S.C.] § 1956(a)(3)(B) [where the crime of money laundering is defined], but in the definitions section of the statute, 18 U.S.C. § 1956(c)(4)," the indictment nonetheless "gave adequate notice of that element" since "a transaction involving illegal international arms sales necessarily affects interstate or foreign commerce" and the indictment "specifically alleged that the financial transaction involved property represented to be the proceeds of criminal violations of the Arms Export Control Act").

-18-

## III.   CONCLUSION

For the aforementioned reasons, Bout's second motion to dismiss the Indictment (and specific counts therein) is denied.  The Clerk of the Court is directed to close this motion [Docket Nos. 33 and 35[65]].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      August 2, 2011
            New York, New York

---

[65]      The motion appears to have been electronically docketed twice.

**- Appearances -**

**For the Government:**

Guruanjan Sahni
Brendan R. McGuire
Assistant United States Attorneys
United States Attorney's Office for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2491
(212) 637-2220


**For Defendant:**

Albert Y. Dayan, Esq.
Albert Y. Dayan, Law Office
80-02 Kew Gardens Road
Suite #902
Kew Gardens, New York 11415
(718) 268-9400

Kenneth J. Kaplan, Esq.
Mayo Schreiber, Jr., Esq.
Kaplan & Katzberg
760 Third Avenue
New York, New York 10017
(212) 750-3100