UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA

v.

Ind. #  08 Cr. 365 (SAS)

VIKTOR BOUT,
                                    Defendant.
-----------------------------------------------------------X


## MEMORANDUM OF LAW

This memorandum is submitted in support of Viktor Bout's post verdict

motion to set aside Bout's conviction on all counts of the indictment and/or to dismiss

certain counts.


### Failure of the Indictment
### to State an Offense.  Counts One and Two

Counts One and Two, purport to charge, respectively, conspiracy to *murder*

United States nationals and United States officers/employees.

Although defendant was tried on a theory of conspiracy to commit

*murder* the relevant counts of the indictment do not so specify.  In each instance

the indictment alleges that the defendants "... conspired ... to *kill* United States

nationals ..." (Count One) and "conspired ... to *kill* officers and employees of

the United States...... " (Count Two). (Emphasis added.)  The words *murder, malice aforethought, premeditation* or any other term describing the  object crime of the charged conspiracy as *murder* are conspicuously absent.

To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; that he knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy; and that an overt act in furtherance of the conspiracy was committed." United States v. Monaco, 194 F.3d 381 (2d Cir. 1999) (internal quotation marks omitted.); United States v. Garcia, 587 F.3d 509, 515 (2d Cir. 2009) (holding that, in conspiracy cases, government must show that defendant knowingly engaged in the conspiracy with the specific intent to commit the offense[ ] that [is] the object [ ] of the conspiracy" (internal quotation marks omitted.)  And, undoubtedly, the essential intent element of the object crime here, *murder*, is that the killing be carried out with *malice aforethought*.

Pretrial, defendant had moved to dismiss the counts for the reason that the indictment did not allege an essential element of the crime of conspiracy to commit *murder*, i.e., that he had acted with the requisite mental state of conspiring to kill with *malice aforethought*.  In denying the motion the Court, without disputing that the indictment did not specifically allege that defendant had conspired to kill with *malice aforethought*,  cited United States v. La Spina, 299 F.3d 165,177 (2d Cir. 2002),

noting that, "[An] indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." But, the language of the indictment employs only the generic term of *killing* of U.S. nationals/officers. And, the term *kill* as used in those statutes, may be carried out by acts of murder in the first degree, or murder in the second degree, or voluntary manslaughter or involuntary manslaughter. 18 U.S.C. 2332; 18 U.S.C. 1114. Under these circumstances, the fact that the indictment tracked the generic language of the statute does not satisfy sufficiency requirements. See, United States v. Pirro, 212 F.3d 86 (2d Cir. 2000):

> Under modern pleading rules, "we have consistently upheld indictments that 'do little more than to track the language of the statute charged and state the time and place in approximate terms) of the alleged crime.'" [Citations omitted]. The Supreme Court, however, has recognized a limitation on this practice, so that "where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, -- it must descend to particulars."
> United States v. Cruikshank, 92 U.S. 542, 588 [1875] "Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." United States v. Hess, 124 U.S. 483, 487 [1888].
> Russell [v. United States], 369 U.S. at 765.
>  * * *   In sum, for an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime.

Thus, as the indictment alleged only in generic terms that the defendants conspired to *kill,* it was clearly insufficient to give notice that Viktor Bout was charged with conspiracy to commit *murder,* indeed if that were the case.

And since the indictment charges, only generically, that the defendants conspired to *kill,* it cannot be determined whether the grand jury found a factual basis for, and intended to charge, conspiracy to commit murder in the second degree, the theory upon which the prosecution proceeded, rather than conspiracy to commit murder in the first degree, which would require proof of premeditation, or even manslaughter.

In sum, to comply with the protections of the Fifth and Sixth Amendments, an indictment must not only contain sufficiently specific facts to provide the defendant "with reasonable certainty, of the nature of the accusation against him" so that he knows "what he must be prepared to meet" Russell v. United States, 369 U.S. 749, 764-65 (1962) (internal citations and quotations omitted), in addition, the indictment must be so framed as "to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." Pirro, 212 F.3d at 92 (internal citations and quotations omitted). As the Supreme Court noted in Russell:

> To allow the prosecutor, or the court, to make a subsequent
> guess as to what was in the minds of the grand jury at the
> time they returned the indictment would deprive the
> defendant of a basic protection which [the] . . . grand jury
> was designed to secure. For a defendant could then be
> convicted on the basis of facts not found by, and perhaps
> not even presented to, the grand jury which indicted him.

Thus, the failure of the indictment to allege that the defendants conspired to commit *murder* or conspired to *kill* with *malice* or *malice aforethought,* renders that document insufficient. Indeed, we would note that our research has not revealed a single case in any jurisdiction, federal or state, (wherein the issue has been raised), in which a defendant was found to have properly been tried for conspiracy to commit murder where the indictment was bereft of the words *murder, malice, malice aforethought, premeditation,* or similar terms, as here.

Accordingly, the pertinent counts of the indictment should be dismissed as failing to state a crime.

**Reference to Statute**

The government may argue that the deficiency in the wording of the indictment does not render the counts insufficient for the reason that each count cites the object statutory section by number. But the Second Circuit has made it abundantly clear that citation to a statutory section, even if the statutory section sets out all the essential elements of the crime, cannot alone, rectify the failure of the indictment to allege an essential element of the offense. See, United States v. Berlin, 472 F.2d 1002 (2d Cir. 1973) ( Failure of the indictment, which charged a false statement, to allege an essential element was not cured by the fact that each count cited the statute that appellant is alleged to have violated. Although the statutes in question explicitly require knowledge of the falsity, if this were enough to cure a

deficient statement, then almost no indictment would be vulnerable to attack; for it is a common practice in indictments to cite the statute that is alleged to have been violated.)

## Failure to Allege Prejudice

In denying Bout's pretrial motion the Court determined that defendant's having failed to allege prejudice due to the insufficiency of the murder counts defeated the motion. This, citing United States v. Walsh, 194 F.3d 37 (2d Cir. 1999). But, as Walsh itself and such other cases as United States v. McClean, 528 F.2d 1250 (2nd Cir. 1976), cited in Walsh, make clear, that reasoning simply does not apply where the indictment is insufficient as a result of it's failure to state the elements of the crime charged or to ensure that the defendant was not prosecuted based on evidence not presented to the grand jury.

## The Court's Charge on Conspiracy
## to Commit Murder Was Erroneous

With regard to the element of conspiratorial intent necessary to convict on Counts One and Two, each purporting to charge conspiracy to commit murder, the Court, over objection, charged the jury:

> Now "murder" is defined as the "unlawful killing of a human being with malice aforethought."

Malice is the state of mind that would cause a person to act without regard to the life of another. To satisfy this element, the defendant must have acted consciously, with the intent to kill another person. **However, the government need not prove a subjective intent to kill on the part of the defendant. It would be sufficient to satisfy this element if it proved reckless and wanton conduct on the part of the defendant which grossly deviated from a reasonable standard of care such that he was aware of the serious risk of death. In order to establish this element, the government must prove that the defendant acted willfully, with a bad or evil purpose to break the law. However, the government need not prove spite,malevolence, hatred or ill will toward the intended victim.** (T-1848;1856) (Emphasis added.)

## Conspiracy to Commit Reckless Murder: A Crime Legally and Logically Impossible to Commit.

The effect of this instruction was to permit the jury to convict Bout of having committed a crime that does not exist, that is, conspiracy to commit reckless murder. See, <u>Lafave</u>, <u>infra</u>,

> [T]here is no such thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently causing a result.

As <u>LaFave</u> explains:

> The fact that conspiracy requires an intent to achieve a certain objective means that individuals who have together committed a certain crime have not necessarily participated in a conspiracy to commit that crime...... It follows, therefore, that there is no such thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently causing a result............. Thus even if what was done under an agreement has been made unlawful on a liability without fault basis, there can be no

> conviction for conspiracy unless it is shown that the parties
> actually intended to achieve what was done. This is as it should
> be, for the fact that a statute has made the doing of a certain act
> an offense without regard to mental fault can hardly be said to
> have worked a change in the mental element of the distinct crime
> of conspiracy.

Wayne R. LaFave, Criminal Law, Section 580-581, 583, 3d ed. (2000).  And, the

American Law Institute, in its Commentary to the Model Penal Code, explicitly

recognizes the same:

> When recklessness or negligence suffices for the actor's
> culpability with respect to a result element of a substantive
> crime, as for example when homicide through negligence
> is made criminal, there could not be a conspiracy to commit
> that crime.

The example for this principle given in the Model Penal Code is quite apt here, that is,

where conspirators:

> plan to destroy a building by detonating a bomb, though
> they know and believe that there are individuals in this
> building and persons are killed, they are guilty of murder, but
> this is because murder may be committed other than with an
> intent-to-kill mental state.
>
> Their plan constitutes a conspiracy to destroy the building, but
> not a conspiracy to kill the inhabitants, for they did not intend the
> latter result.

Model Penal Code Sec. 5.03, Comment at 407-08 (1985).

Aside from the commentators, numerous state courts have held that it is

not possible to conspire to achieve an unintended consequence.  Specifically

regarding conspiracy to commit homicide, see, for example,  State v. Baca,  950

P.2d 776 (N.M. 1997) (reversing conviction for conspiracy to commit "depraved

mind" murder, which does not require intent to kill, but only recklessness);

People v.Swain, 909 P.2d 994 (Cal. 1996)(not possible to conspire to commit

"implied malice murder," which does not require intent to kill); Palmer v. People,

964 P.2d 524 (Colo.1998)(conspiracy to commit reckless manslaughter not a

crime); Conley v. State, 247 S.E.2d 562 (Ga. 1978) ("one cannot conspire to kill

another in the heat of passion").

We have found no federal case which addresses the viability of charging a

conspiracy to commit reckless murder. United States v. Chagra, 807 F.2d 398 (5th Cir.

1986) and United States v. Croft, 124 F.3d 1104 (9th Cir. 1997), cases which have been

referenced by the government in this context, do not address the issue of whether or not

there can be a conspiracy to commit reckless murder and have never been cited in

support of such a notion. Both Chagra and Croft hold only that federal law recognizes

conspiracy to commit second degree murder when conspirators act with intent to kill

but without premeditation and deliberation.

Three Circuits, however, including the Second, have applied the LaFave and

Model Penal Code reasoning to analogous specific intent crimes. In United States v.

Kwong, 14 F.3d 189 (2d Cir. 1994), the Second Circuit rejected a "malice

aforethought" instruction essentially identical to that here and overturned a conviction

based on the specific intent crime of attempted murder. Beginning with the Supreme

Court's holding that "an attempt to commit murder requires a specific intent to kill,"

Braxton v. United States, 500 U.S. 344, 351 fn. (1991), the Second Circuit concluded that specific intent was an essential element of attempted murder and that mere recklessness would not suffice; holding that the jury instruction permitting "reckless and wanton conduct" as proof of an intent to kill created constitutional error. And, the error was not harmless.

In United States v. Jones, 681 F.2d 610 (9th Cir. 1982), the charge was assault with intent to commit murder. The trial court instructed the jury that murder was the unlawful killing of a human being with malice aforethought and defined malice aforethought as either an intent to take the life of another or an intent to act willfully in callous and wanton disregard of the consequences to human life. Noting that this definition would have been correct as part of an intent instruction if the charge had been murder, the Ninth Circuit ruled that assault with intent to commit murder requires a specific intent to kill the victim. And, thus, the court found, the intent to act in wanton disregard of the consequences to human life is less than the specific intent to kill necessary for a conviction of assault with intent to commit murder.

In United States v. Perez, 43 F.3d 1131 (7th Cir. 12/22/1994), defendant was also charged with assault with intent to commit murder and the "malice aforethought" instruction given stated that the government must prove that Mr. Perez "acted consciously, with the intent to kill" However, it also specifically

10

stated that the government need not prove Mr. Perez' "subjective intent to kill "--

a showing of "reckless and wanton conduct" was sufficient. Citing <u>Kwong</u> and

<u>Jones</u>, the Seventh Circuit held that by permitting the jury to convict without

determining that the defendant had the subjective intent to kill the victim, the

instruction constituted a misstatement of the law. More precisely, it constituted a

misstatement of an element of the offense, was plain error and required reversal.

   At the district court level, see, <u>United States v. Muyet</u>, 994 F. Supp. 501 (S.

D.N.Y. 1998), where without discussion, the court, citing <u>Kwong</u>, stated, "The charges

of conspiracy to murder and attempted murder require proof of an intent to kill."

   Accordingly, Counts One and Two should be dismissed.


**<u>Retroactive     Misjoinder:</u>**
**<u>Prejudicial Spillover</u>**

   For the reasons discussed above, the murder counts, Counts One and Two,

should never have been presented to the trial jury and should be dismissed.

   Further, the prejudicial effect of the admission of evidence admissible only as to

the murder charges and the prejudicial effect of the government's argument portraying

Bout as a self-avowed enemy of the United States; an individual who "had been fighting

the United Sates for the last fifteen years" and "had the will to" and "jumped at the

opportunity" to help FARC murder "American pilots and servicemen and women

stationed in Colombia," made a fair trial for Bout on the remaining counts not possible.

As the prosecutor put it in his opening statement:

> The defendant was presented with an opportunity to put
> a multi-million dollar arsenal of weapons and explosives
> into the hands of men who told him that they needed it
> to kill American pilots. And he jumped at the opportunity.
> He had the experience to do it, he had the means to do it,
> he had the will to do it. And he agreed to do it.

And, in summation:

> So when Carlos and Ricardo made clear that they wanted to
> kill U.S. forces in Colombia, how did Bout reply? "We are
> together. We have the same enemy. It's not business, it's
> my fight. I'm fighting the United States for 10 to 15 years."

The term "retroactive misjoinder" refers to circumstances in which the

joinder of multiple counts was proper initialy, but later developments render the initial

joinder improper. United States v. Hamilton, 334 F.3d 170 (2d Cir. 2003); United

States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994). In order to be entitled to a new trial

on the ground of retroactive misjoinder, a defendant "must show compelling

prejudice." United States v. Vebeliunas, 76 F.3d 1283, 1293-94 (2d Cir.). Such

"compelling prejudice" may be found where there is "[p]rejudicial spillover from

evidence used to obtain a conviction subsequently reversed on appeal." Jones, 16 F.3d

at 493. The concept of prejudicial spillover requires an assessment of the likelihood

that the jury, in considering one particular count was affected by evidence that was

relevant only to a different count or defendant. See generally, United States v. Tellier,

83 F.3d 578, 582 (2d Cir. 1996); United States v. Barton, 647 F.2d 224, 241 (2d Cir. 1981).

In United States v. Wapnick, 60 F.3d 948, 953-54 (2d Cir. 1995), citing United States v. Rooney, 37 F.3d 847, 855-56 (2d Cir. 1994), the three factors to be considered when a defendant has raised a prejudicial spillover argument were set out. First, the evidence introduced in support of the vacated count must be examined to see if it "was of such an 'inflammatory' nature that it 'would have tended to incite or arouse the jury into convicting the defendant on the remaining counts.'" Wapnick, 60 F.3d at 953 (quoting United States v. Friedman, 854 F.2d 535, 582 (2d Cir. 1988). Here, it seems self-evident that depicting Viktor Bout as a murderous arms dealer willing, indeed even anxious, to supply FARC with weapons to murder innocent American servicemen and women would severely prejudice Bout in the eyes of the American jurors. To argue otherwise would, we suggest, be unrealistic at best.

The second factor, whether the evidence and argument relevant to the dismissed count would have been admissible on the remaining counts, resolves in favor of defendant as well. For, one need not intend to murder American soldiers to be guilty of the charges in Counts Three and Four. And, the evidence relating to murder was so prejudicial that even if it possessed some relevance as to Counts Three and Four it would have likely been excluded on a prejudice/relevance balancing test if the murder

counts had not been extant.

The third factor, an assessment of the strength of the government's case on the remaining counts, does not substantially favor the government either. The ultimate issue on the remaining counts, as set out so clearly by the trial record, was whether Bout had actually intended to supply FARC with missiles or other arms, or was attempting to lure the so-called FARC agents into a transaction for airplanes only. Thus, that Bout had, admittedly after being trapped into, uttered words to the government operatives that on their surface supported the government's position, was far from dispositive. For, the government's position on Bout's actual intent was essentially dependant on the testimony of co-conspirator, Smulian, a single cooperator whose credibility was subject to attack based on his status as a cooperator and his own unsavory past history. Moreover, the trial record revealed that Bout did nothing in connection to the so-called FARK agents' request for arms except travel to a meeting in Thailand with information on two cargo air craft. During the course of pursuit for Bout and trial there was no request for down payment for arms, no inspection of arms, no specifications for arms, no list for arms and no commitment on the part of Bout to deliver arms, etc. There was an utter lack of evidence that Bout intended to do anything in connection with the proposed arms deal. Under these circumstances, an argument that the government's case was sufficiently strong so that there was little or no likelihood that any prejudice from the murder charges tainted the jury's verdicts on the remaining charges would simply be

unjustifiable.  The entire investigation and prosecution of Bout planed on prejudicing him in the eyes of an American Jury.    The prosecution at trial against Bout had no more than prejudice.  Accordingly, the prejudicial spillover effect of the murder counts warrants reversal of the convictions on the remaining counts as well.

## Count Three - Missiles

## Jurisdiction Does Not Exist on the Charge that Bout Conspired to Acquire and Export Missiles

Conviction on18 U.S.C. 2332g may be based on several different means of violating the statute.  The statute provides:

>(a) Unlawful Conduct.

>>(1) *   *   * it shall be unlawful for any person to knowingly produce, construct, otherwise acquire, transfer directly or indirectly, receive, possess, import, export, or use, or possess and threaten to use —

>>>(A) an explosive or incendiary rocket or missile ........

Mr. Bout, however, was tried and convicted of having violated 2332g only on the basis of his allegedly having conspired to acquire and export missiles.

Indeed, the Court submitted to the jurors only the charge of conspiring to **acquire and import** missiles, instructing them that:

>>Count Three of the indictment alleges that Mr. Bout conspired with others to acquire and export anti-aircraft missiles.   (1844-5).

* * *

   In order to sustain its burden of proof with respect to Count
Three, the government must prove beyond a reasonable doubt
two elements. First,the existence of the charged conspiracy, as
further described below; and Second, that the defendant
intentionally joined and participated in the conspiracy during
the applicable time period in order to further its unlawful
purpose. In previously instructing on Counts One and Two, I
have already instructed you on these two elements in general.
Please note, however, that in contrast to Counts One and Two,
the government need not prove that any overt act was taken in
furtherance of the conspiracy alleged here in Count Three.  It
is enough that the conspiracy existed, and that the defendant
intentionally joined and participated in it, if you so find.

The conspiracy alleged in Count Three is materially different
from the conspiracies alleged in Counts One and Two.
Specifically, **in order to satisfy the first element of Count
Three, the government must prove beyond a reasonable
doubt that one purpose of the conspiracy was to acquire
and export explosive or incendiary rockets** or missiles guided
by a system enabling the rockets or missiles to seek aircraft,
which   includes helicopters. (1857-58)(Emphasis added).

Clearly then, the jury, in conformity with the Court's instructions,

convicted Bout, on Count Three,of the offense of acquiring and exporting

missiles and no other.  And, there is no basis to claim, for example, that he was

convicted of having conspired **to use, or  possess and threaten to use** an explosive

or incendiary rocket or missile.

Under these circumstances, statutory jurisdiction to convict and

sentence the defendant for the offense of conviction - conspiracy to **acquire and**

**export** missiles - does not exist.  The only means of acquiring jurisdiction under

2332g is spelled out in the statute:

> (b) Jurisdiction.— Conduct prohibited by subsection (a) is within the jurisdiction of the United States if—
>
> (1) the offense occurs in or affects interstate or foreign commerce;
>
> (2) the offense occurs outside of the United States and is committed by a national of the United States;
>
> (3) the offense is committed against a national of the United States while the national is outside the United States;
>
> **(4) the offense is committed against any property that is owned, leased, or used by the United States or by any department or agency of the United States, whether the property is within or outside the United States; or**
>
> (5) an offender aids or abets any person over whom jurisdiction exists under this subsection in committing an offense under this section or conspires with any person over whom
> jurisdiction exists under this subsection to commit an offense under this section. (Emphasis added.)

Presumably, the government will argue that jurisdiction is found under subparagraph (4) because - the prosecution may claim- "the offense [w]as committed against ... property that is owned, leased, or used by the United States"   But, not by any fair reading of the statute can it be said that the offense of "acquiring" and "exporting" missiles - the only acts by which Bout allegedly violated the missile statute - is "committed against ... property."  Of the several means by which the statute may be violated the only ones that charge the offense

in terms that can reasonably be said to have been *against property* is the *use or threatened use* of missiles.  But, Bout was not convicted on that basis.

Accordingly, Count Three should be dismissed for lack of subject matter jurisdiction.


**Sufficiency of the Evidence**
**to Establish Jurisdiction**

Even if it were to be assumed, *arguendo,* that the acquiring or exporting of missiles could be a crime against "property that is owned, leased, or used by the United States or by any department or agency of the United States," as would provide jurisdiction here, the evidence was insufficient to establish that the "American" helicopters, purported to have been FARC's target, were such designated property or that Bout and Smulian believed that that were so.

There was no evidence adduced at trial that the helicopters, even if manufactured by the United States, were owned by, leased to or used by the United States rather than by the Colombian government. Even if the aircraft were flown by "American pilots," whatever that term means, that, by itself, does not establish that the helicopters were used by the United States or a department or agency thereof, rather than being merely flown by "Americans" in service to and for the use of the Colombian government.  Therefore the evidence was insufficient to establish the jurisdictional element of the missiles count.

**Jurisdiction/Nexus**

Due process requires that a nexus between the defendant's acts and the United States be established to allow for prosecution in the United States of a crime committed extra-territorially. That is, it must be shown that the defendant "should [have] reasonably anticipate[d] being haled into court in this country" for his overseas conduct. United States v. Klimavicius-Viloria, 144 F.3d 1259 (9th Cir. 1998). Pre-trial the Court had found such nexus in that it was alleged that Bout offered to sell millions of dollars of weapons to the FARC after acknowledging ... his understanding that the FARC intended to use those weapons to kill U.S. forces in Colombia.

We would urge, to the contrary, that under the circumstances of this case, Bout could not have reasonably anticipated being haled into a United States court for the acts alleged in Counts Three and Four since his acts implicated the rules and laws of a declared military combat and war. His alleged conduct did not implicate United States interests.

The United States had insinuated itself into, committed its armed forces to, and voluntarily had those armed forces participate in armed military combat on behalf of Colombia against FARC in the civil war between those two entities. Thereby, the United States armed forces had ceded their status as United States civilians/employees and had become an instrumentality of the Colombian government in that government's military effort to maintain its political integrity against the

insurgent FARC.  Moreover, the United States armed forces in Colombia were, *de facto*, if not *de jure*, the armed forces of Colombia, not the United States.  Thus, prosecution of Viktor Bout in the United States would serve to further the political/military interests of Colombia not those of the United States.

It is not possible that Congress in enacting the pertinent statutes had intended to utilize a criminal charge in a United States court against a distributor of arms in a declared military conflict where those arms are used against American combatants engaged in military conflict to vindicate the political/military interests of a foreign nation.  There was no crime committed in the United States.  Nor is it possible that Mr. Bout could reasonably have anticipated the same.  It is difficult to imagine what would be the result if every nation would criminalize the production and distribution of arms by that nation's foreigners intended to be used against that nation's military.  Of course, a possible chilling effect on the global production of arms would be a good result.  But, I do believe that neither The United States Congress nor the heads of other foreign nations would intend to do that.

Accordingly, the defendant's due process rights have been violated in that the necessary nexus has not been established.

**The Issue of Jurisdiction Was**
**Not Submitted to the Jury**

The question of the existence of statutory jurisdiction is one that must be submitted to the jury and found to exist, by the jury, beyond a reasonable doubt.

United States v. Gaudin, 515 U.S. 506 (1995); United States v. Vasquez, 497

F.3d 220 (2d Cir. 2007).  The failure here to submit this issue to the jury on any

count is reversible error even in the absence of a contemporaneous objection.


Conclusion

      For the reasons discussed above, the convictions on all counts should be set

aside and all counts should be dismissed.

      Respectfully submitted,


      *Albert Y. Dayan*

      Albert Y. Dayan